# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| GREGORY EVERETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:14-CV-04033-NKL |
| | ) |
| BOMBARDIER-ROTAX, GmbH, | ) |
| MOTORENFABRIK, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Defendant Kodiak Research, Ltd. moves to dismiss the Complaint of Plaintiff Gregory Everett for lack of personal jurisdiction. [Doc. 11]. For the reasons set forth below, Kodiak's motion is GRANTED.

## I.  Background

This case arises from a plane crash in which Everett, a Missouri resident, was severely and permanently injured. Everett generally alleges that the crash was caused by a defective airplane engine that was manufactured, marketed, and sold by the defendants. Everett's Complaint asserts claims for negligence, strict products liability for product defect as well as failure to warn, and breach of express and implied warranty.

Kodiak is a North American distributor of Rotax engines and parts located in and organized under the laws of the Commonwealth of the Bahamas, where all of Kodiak's sales are made. Kodiak purchases Rotax engines and parts on a wholesale basis from

BRP-Powertrain GmbH & Co. KG (BRP), an Austrian engine manufacturer located in Austria. BRP and Kodiak have no common ownership, management, officers, or employees, and neither exercises any control over, or possesses an ownership interest in, the other.

In the past ten years, Kodiak has sold engines to one Missouri resident, Zenith Aircraft Company. However, these sales constitute less than one-percent of Kodiak's total sales and did not include the engine at issue in this case. Kodiak also did not sell any engines to Zenith in 2013 and has not made any sales to Zenith so far in 2014. Kodiak has no agents, representatives, employees, offices, property, phone listings, or bank accounts in Missouri and has never employed any advertising or marketing directed into or targeting Missouri. Kodiak's website displays the engines that Kodiak sells, but engines cannot be purchased through this website. Kodiak's website also lists the locations of independent repair and service centers, including, as of May 14, 2014, two located in Missouri.

How the engine at issue in this case arrived in Missouri is not in dispute. The engine was designed and manufactured in Austria by BRP and sold to Kodiak. The engine was then sold by Kodiak in the Bahamas to Defendant Leading Edge Air Foils, LLC (LEAF). LEAF is an independent, retail seller of aircraft products located in and organized under the laws of Wisconsin. Everett purchased the engine at issue from LEAF at an airshow that took place in the summer of 2010 in Oshkosh, Wisconsin. LEAF did not ship the engine to Missouri. Rather, Everett took possession of the engine

in Wisconsin and was seen loading it into a motor home in a parking lot, presumably for transport to Missouri.

Everett alleges that he installed the engine into his aircraft on his own in Missouri in 2011. Everett also claims to have made numerous phone calls to LEAF with various complaints about the engine, at which times he received a number of varied instructions from LEAF employees. Although there is some dispute as to whether there are any Kodiak- and/or LEAF-affiliated repair centers in Missouri, Everett does not claim to have had any work performed on the engine at any repair center, in Missouri or elsewhere.

LEAF's retail sales include thousands of various aircraft related products made by a number of different manufacturers. Kodiak provided no instruction and had no control as to where LEAF might resell the engine at issue in this case. LEAF and Kodiak have no common ownership, management, employees, or officers, and neither exercises any control over, or possesses an ownership interest in, the other.

## II.  Discussion

Kodiak argues that Everett's claims against it must be dismissed for lack of personal jurisdiction. As the party asserting that personal jurisdiction exists, Everett has the burden of proving facts sufficient to make a prima facie showing of jurisdiction. *See Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008). Although Everett must ultimately prove the existence of personal jurisdiction by a preponderance of the evidence, this need not occur "until trial or until the court holds an evidentiary hearing." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). Nonetheless, the requisite "prima facie showing must be tested, not by the

3

pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Miller*, 528 F.3d at 1090 (quotations omitted). In reviewing these materials, the Court must view the facts in the light most favorable to Everett and resolve all factual conflicts in his favor. *See Dakota Indus., Inc.*, 946 F.2d at 1387.

Everett does not contend that Kodiak is subject to general personal jurisdiction in Missouri, and in any event the evidence of Kodiak's lack of a presence in and minimal contacts with Missouri would not support such a finding. Accordingly, the sole question presented is whether Kodiak is subject to specific personal jurisdiction, which "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) (quotation omitted). Specific personal jurisdiction exists only to the extent permitted by Missouri's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Id.* The requirements of Missouri's long-arm statute and the Due Process Clause present two, independent inquiries that must be addressed separately, and failure to satisfy either precludes the exercise of specific personal jurisdiction. *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909-10 (8th Cir. 2012).

It is not necessary to consider the application of Missouri's long-arm statute in this case, because the exercise of personal jurisdiction is not permitted by the Due Process Clause. The Due Process Clause "requires that a defendant have certain 'minimum contacts' with the forum state for personal jurisdiction to be exercised." *Myers*, 689 F.3d at 911. Sufficient minimum contacts warranting the exercise of specific personal jurisdiction may exist "when a defendant, through its contacts with the forum,

purposefully avails itself of the privilege of conducting business in the forum, in a suit arising out of or related to the defendant's contacts with the forum." *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 746 (8th Cir. 2011) (quotations omitted). Thus, it is necessary to "consider whether the suit arises out of or is related to the [nonresident defendant's] contacts with the forum," as well as "whether [the defendant] engaged in activities in the forum that reveal an intent to invoke or benefit from the protection of its laws." *Id.* (quotation omitted).

In this case, there is simply no connection between Kodiak's scant Missouri contacts and Everett's causes of action. Everett did not purchase the allegedly defective engine in Missouri or from a Missouri retailer. Rather, it is undisputed that LEAF purchased the subject engine from Kodiak in the Bahamas, and then LEAF sold it to Everett in Wisconsin. [Doc. 46-1 at 3]. The engine only arrived in Missouri as a result of Everett's unilateral action. [*See* Doc. 46-1 at 3]. For specific personal jurisdiction to be exercised in accord with the Due Process Clause, "the defendant's *suit-related* conduct must create a substantial connection with the forum State," and this "relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quotation omitted) (first emphasis added). In this context, it is not sufficient "to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff." *Id.* at 1123 (quotations omitted).

Kodiak's only conduct that relates to the present case consists of the sale of the subject engine in the Bahamas to a Wisconsin company for resale, which ultimately occurred in Wisconsin. In opposing Kodiak's motion to dismiss, Everett relies heavily

5

on a decision by a Missouri circuit court, which found that personal jurisdiction existed as to BRP in a similar products liability suit. That case is readily distinguishable, however, as the plaintiff there alleged that the subject engine was sold to a Missouri retailer and purchased by the end user in Missouri. [*See* Doc. 35-1 at 3]. The subject engine did not arrive in Missouri due to the unilateral acts of the final purchaser, but rather "through Rotax's distribution agreement with Kodiak." [Doc. 35-1 at 7]. This key Missouri connection is wholly absent in this case.

By contrast, in another products liability suit involving the same engine manufacturer, the Eastern District of Pennsylvania found that specific jurisdiction did not exist where the subject engine did not arrive in the forum state pursuant to a chain of distribution designed to serve that state. *See Simeone ex rel. Estate Of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 672 (E.D. Pa. 2005). The *Simeone* court reasoned:

> [W]hile Rotax certainly intends for some of its aircraft engines to end up in the United States (and perhaps in Pennsylvania, specifically), there is no evidence that Rotax intended this *particular* engine to enter Pennsylvania. In other words, there is no connection here between the activities that Rotax purposefully directed at Pennsylvania and the accident that ultimately occurred.

*Simeone ex rel. Estate Of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 672 (E.D. Pa. 2005). Similarly, in this case, it is not enough that Kodiak may sometimes sell products through a distribution chain designed to serve Missouri residents, because the engine at issue was not distributed through this chain. In other words, the present case does not arise from or relate to any conduct purposefully directed

toward Missouri. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (plurality opinion) ("[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.").

In an effort to create some connection between Kodiak's suit-related conduct and Missouri, Everett suggests that "Kodiak instructed and was aware" that LEAF "would sell the subject Rotex engine or similar engines to residents in Missouri," [Doc. 36 at 7]. The evidence submitted by the parties, however, provides no support for this claim. Everett cites to what he characterizes as a "Territory Map for the sale of Rotax Engines," which he claims shows that LEAF's sales territory includes Missouri, as well as twelve other states. *See* [Doc. 36-2]. Even assuming that LEAF has a specific sales territory comprised of thirteen states, it is far from clear how this suggests that Kodiak instructed LEAF to sell the subject engine to Missouri residents.

In any event, Kodiak has submitted uncontroverted evidence explaining that this map does not demarcate sales territory, but rather shows the areas in which LEAF may authorize other businesses to serve as independent repair centers. [Doc. 46-1 at 3]. This affidavit further clarifies that "Kodiak has never instructed LEAF to target Missouri for sales activities," "LEAF has no set sales territory and is free to sell or not to sell within the United States, wherever it wishes," and that the map cited by Everett "is more than ten years out of date and is not accurate." [Doc. 46-1 at 3-4]. This affidavit further states that, "out of the seventeen independent Repair Centers that LEAF works with, there are

no Repair Centers located in Missouri." [Doc. 46-1 at 4]. Of course, even if LEAF or Kodiak has some affiliation with a repair center or centers in Missouri, the present case is not related to these activities, as Everett has not alleged that the subject engine was ever serviced at a center in Missouri.

Finally, although Everett requests additional discovery on the question of jurisdiction, Everett has failed to identify what facts he seeks to discover or how this additional evidence might support the existence of personal jurisdiction. This deficiency alone is a sufficient basis for denying Everett's request. *See Johnson v. United States*, 534 F.3d 958, 965 (8th Cir. 2008) (affirming the denial of the plaintiff's request for additional, jurisdictional discovery where the plaintiff failed to explain how the additional facts sought would raise a genuine issue of material fact as to jurisdiction).

Furthermore, even assuming that additional discovery would reveal that Kodiak and/or LEAF have contracted to sell other engines in Missouri, which appears to be the principal aim of Everett's request for further discovery, it is undisputed that the current case is not related to these sales. There is simply no basis for inferring that the distribution chain that ended with the subject engine being sold in Wisconsin involved any effort or intent on Kodiak's part to do business in Missouri. To the extent that Kodiak, as Everett alleges, "is part of a sophisticated distribution chain of Rotax engines, which regularly sells Rotax engines to dealers throughout the United States including Missouri," [Doc. 36 at 5], specific personal jurisdiction may exist in a case arising from Kodiak's efforts to serve the Missouri market. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). It is readily apparent, however, that this is not such

a case.  Consequently, the facts essential to resolving this jurisdictional dispute are neither unknown nor disputed, such that no further discovery is warranted.  *See Viasystems, Inc.*, 646 F.3d at 598.

## IV.   Conclusion

For the foregoing reasons, Defendant Kodiak Research, Ltd.'s motion to dismiss for lack of personal jurisdiction [Doc. 11] is GRANTED.  Plaintiff Gregory Everett's claims against Kodiak are hereby DISMISSED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: August 1, 2014
Jefferson City, Missouri